Case 4:15-cv-03233 Document 48 Filed in TXSD on 05/20/16 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
May 20, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAPSTONE ASSOCIATED SERVICES, LTD., *et al.*, Plaintiffs, | § § § § | |
| v. | § | CIVIL ACTION NO. H-15-3233 |
| ORGANIZATIONAL STRATEGIES, INC., *et al.*, Defendants. | § § § § § | |

# **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Reconsideration [Doc. # 43] filed by Defendants Organizational Strategies, Inc. ("OSI"), Nicolette Hendricks, William Hendricks, Integration Casualty Corp., System Casualty Corp., and Optimal Casualty Corp. (collectively, the "OSI Entities"), to which Plaintiffs Capstone Associated Services, Ltd. and Capstone Associated Services (Wyoming), Limited Partnership (collectively, "Capstone") filed a Response [Doc. # 44], and Defendants filed a Reply [Doc. # 45]. Defendants seek reconsideration of the Court's Memorandum and Order [Doc. # 42] entered April 8, 2016, granting Plaintiffs' Motion to Compel Arbitration. Defendants argue that the Court's ruling is precluded by the Memorandum Opinion and Order entered July 29, 2013 by the Honorable Gray

Miller in *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, Civil Action No. H-13-1857 ("Judge Miller's Decision"). Having reviewed the record and applicable legal authorities, the Court **denies** the Motion for Reconsideration.

## I.   BACKGROUND

Defendant Organizational Strategies, Inc. is a defense contractor owned and operated by Defendants Nicolette and William Hendricks. Integration Casualty Corp., System Casualty Corp. and Optimal Casualty Corp. are captive insurance companies, established to insure the risks of the business with which they are associated. Capstone offers alternative risk planning and administrative services for captive managers. The Feldman Law Firm LLP and its principal attorney Stewart Feldman (collectively, "Feldman") are the attorneys for Capstone in connection with its business of providing planning services for captive insurance companies.

Capstone alleges that it and Feldman entered into a contract with Defendants. Plaintiffs allege that the contract is comprised of a June 20, 2011 Engagement Letter with "Guidelines on Firm Administration and Billing" attached ("Engagement Letter"), as amended by the "Capstone Services Agreement" ("CSA"). *See* Exhibit 1 to Amended Complaint [Doc. # 21-1]. The CSA provides specifically that it and the Engagement Letter collectively are the entire agreement, and that the agreement can be "amended, modified, or supplemented only by written agreement executed by the

parties" thereto. *See* CSA [Doc. # 21-1], p. 10. The CSA controls in the event of a conflict between it and the Engagement Letter. *See id.* at 9. Under Article V of the CSA, Defendants were granted a limited license to use Capstone's intellectual property, a license that would expire upon the termination of the contract. *See id.* at 8-9.

The Engagement Letter contains a provision that requires arbitration of most disputes among the parties ("Arbitration Provision"). This Arbitration Provision specifically excludes disputes or claims for attorneys' fees and/or costs, and requires arbitration "with respect to any and all other disputes or claims whatsoever . . . related to or arising out of [Feldman's] services." *See* Arbitration Provision [Doc. # 21-1], pp. 14. The Arbitration Provision in the Engagement Letter provides that it "shall be effective notwithstanding any actions that may later take place." *Id.* at 15. The Arbitration Provision states clearly and unequivocally that the parties agree that the issue of arbitrability shall be decided by the arbitrator and not by the court. *See id.*

In Article VI, the CSA provides that the sole venue and jurisdiction for Article V (intellectual property) claims "shall be courts located in Harris County, Texas" and venue and jurisdiction for "all other disputes" will be in Delaware. *See id.* The parties "expressly recognized that parallel proceedings may thereby result." *Id.*

Capstone alleges that in 2012, Defendants questioned the price of the insurance premiums for the captives' insurance policies. A related dispute arose in 2012 when Defendants failed to pay for Plaintiffs' services. Defendants notified Plaintiffs in writing that they would be terminating the contract effective December 31, 2012. Capstone alleges that, after the CSA was terminated, Defendants improperly continued to use the intellectual property that was the subject of the license and refused to return confidential documents.

Capstone filed an arbitration demand against the OSI Entities in March 2013. Capstone asserted that its claim arose out of a breach of contract. Dion Ramos of Conflict Resolution Systems, PLLC appointed himself as the arbitrator. PoolRe Insurance Corp. ("PoolRe") and Feldman intervened in the arbitration. Ramos found that the Engagement Letter's arbitration clause required arbitration of Capstone's claims.

Meanwhile, the OSI Entities filed a lawsuit in Delaware in April 2013, asserting claims for professional negligence, malpractice, fraud in the inducement and breach of contract. Capstone removed the lawsuit to Delaware federal court, where it was assigned to the Honorable Richard G. Andrews.

Back in Houston, the arbitration was scheduled to begin on June 26, 2013. On Sunday, June 23, 2013, Capstone filed a second arbitration demand, asserting that the

OSI Entities breached Article V of the CSA, which related to Capstone's intellectual property. On Monday, June 24, 2013, Capstone filed a notice purporting to withdraw its second arbitration demand, arguing that the claim was already part of the Houston arbitration. Arbitrator Ramos disagreed and held that the Article V claim would not be part of the arbitration.

On June 25, 2013, PoolRe filed the Motion for Confirmation of Arbitration Award, which was assigned to Judge Miller as Civil Action No. H-13-1857. PoolRe sought an order from Judge Miller confirming "a forthcoming arbitration award." Judge Miller ordered PoolRe to show cause why the case should not be dismissed for lack of jurisdiction to confirm an arbitration award that had not been issued, with a July 9, 2013 deadline for PoolRe's response. In its response, filed at 11:26 p.m. on July 9, 2013, PoolRe represented that the arbitration award its favor was issued on July 9, 2013. Additionally, PoolRe asked Judge Miller to compel the OSI Entities to participate in a the arbitration of the Article V claim that Arbitrator Ramos held was not part of the first Houston arbitration. Judge Miller denied the request to compel arbitration of the Article V claim, citing the venue requirement in Article VI of the CSA that required Article V claims to be litigated solely in the courts of Harris County, Texas.

Meanwhile, back in Delaware, Judge Andrews ruled in February 2014 that the parties were contractually required to arbitrate the non-Article V claims in Delaware. The OSI Entities immediately filed an arbitration demand in Delaware. On March 14, 2014, the OSI Entities filed a motion in the Delaware federal court seeking an order compelling arbitration. In his May 29, 2014 ruling, Judge Andrews granted the OSI Entities' motion to compel arbitration of the non-Article V dispute. In March 2015, the United States Court of Appeals for the Third Circuit affirmed Judge Andrews's decision.

On October 1, 2015, Plaintiffs filed this lawsuit against Defendants in Texas state court. On October 28, 2015, Plaintiffs and Defendants mediated all of their disputes in a single mediation. The mediation resulted in the execution of the parties' Mediated Settlement Agreement ("MSA"), which covers all claims between the parties except the intellectual property (Article V) claims pending in this lawsuit. *See* MSA, Exh. A to Motion to Compel Arbitration [Doc. # 32], ¶ 3.

Plaintiffs filed a Motion to Compel Arbitration. Plaintiffs argued that Defendants' affirmative defenses, asserted in Defendants' Answer and in their Motions to Dismiss, are based on issues that were covered by and released under the MSA. The issues asserted as affirmative defenses are not Article V claims for relief but are, instead, non-Article V issues relating to Feldman's services under the

Engagement Letter and the CSA. This Court granted the request for arbitration pursuant to the Arbitration Provision in the Engagement Letter and held that the issue of arbitrability would be decided by the arbitrator. *See* Memorandum and Order [Doc. # 42], p. 9.

Defendants filed their Motion for Reconsideration, arguing that, based on Judge Miller's July 23, 2013 decision in the *PoolRe* case, *res judicata* precluded arbitration in this case. The Motion for Reconsideration has been fully briefed and is now ripe for decision.

## II.   STANDARD FOR RECONSIDERATION

Rule 59(e) permits a litigant to file a motion to alter or amend a judgment. FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Reconsideration of a judgment is an "extraordinary remedy that should be used sparingly." *Waites v. Lee County, Miss.*, 498 F. App'x 401, 404 (5th Cir. Nov. 26, 2012) (quoting *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Knight v. Kellogg Brown & Root Inc.*, 2009 WL 1471788, at *6 (5th Cir. 2009) (quoting *Templet*, 367 F.3d at 479). Instead, Rule 59(e) serves

the narrow purpose of allowing a party to bring errors or newly discovered evidence to the Court's attention. *See In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

A litigant seeking relief under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 452 F. App'x 495, 499 (5th Cir. 2011) (citing *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quotation marks and citation omitted)). A Rule 59(e) motion "cannot be used to argue a case under a new legal theory." *Id.* (citing *Ross*, 426 F.3d at 763). Moreover, "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet*, 367 F.3d at 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)); *see also Tate v. Starks*, 444 F. App'x 720, 729 (5th Cir. June 21, 2011).

### III.   ANALYSIS

Defendants seek reconsideration of the Court's April 8, 2016 Memorandum and Order. Based on Judge Miller's July 23, 2013 decision in the *PoolRe* case, Defendants argue that *res judicata* precludes arbitration. "Res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded

by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Houston Professional Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). In this case, Defendants have failed to establish the fourth element.

Plaintiffs seek to arbitrate whether Defendants in the MSA released the affirmative defenses of prior material breach, conflict of interest, unclean hands, fraud and illegality, and unconscionability. Each of these affirmative defenses is related to or arises out of Feldman's services under the Engagement Letter and the CSA. None of the affirmative defenses involves a claim for relief under Article V of the CSA. This Court, based on the clear and unambiguous language in the Engagement Letter, held that the arbitrability of this specific issue would be determined by the arbitrator.

Judge Miller in the *PoolRe* case was presented with a different issue. In that case, the issue was whether the Court or the arbitrator would decide the arbitrability of claims under Article V of the CSA. Judge Miller noted that the Engagement Letter contains a clear delegation to the arbitrator of the authority to decide arbitrability. Judge Miller then noted that the CSA's provision in Article VI that venue and jurisdiction for Article V claims would be in **the courts** of Harris County, Texas, indicated that "the parties intended to entrust disputes arising under Article V to a judicial forum in Harris County, Texas." *See* Judge Miller's Decision, p. 13.

Therefore, Judge Miller held that "the venue clause of Article VI of the [CSA] supersedes the broad arbitration provisions of the [Engagement Letter] *insofar as they relate to claims for relief under Article V of the [CSA]*." *Id.* at 10 (emphasis added). In the case now before this Court, the affirmative defenses are not claims for relief under Article V of the CSA and, as a result, Judge Miller's decision did not decide the issue before this Court. It is clear from the CSA and the MSA that the parties' position throughout has been to treat the Article V claims and the non-Article V claims differently. Indeed, no party is asserting that Plaintiffs' Article V claims in this case are arbitrable.

It may ultimately be decided that Defendants are correct that the non-Article V issues in this case, presented as affirmative defenses to Article V claims, are not arbitrable. The parties agreed in the Engagement Letter, however, that the issue of arbitrability would be decided by the arbitrator. The parties' agreement is not affected by Judge Miller's *PoolRe* decision, which was limited to the decision regarding the arbitrability of Article V claims. This Court's failure to give *res judicata* effect in this case to Judge Miller's ruling in *PoolRe* was not manifest error and, therefore, reconsideration is not warranted.

## IV. CONCLUSION AND ORDER

Judge Miller's decision in *PoolRe* has no preclusive effect on this Court's decision that the arbitrator should determine the arbitrability of whether non-Article V affirmative defenses, based on services performed under the Engagement Letter and the CSA and asserted in this lawsuit, were waived in the MSA. The Court's prior ruling was correct, and it is hereby

**ORDERED** that Defendants' Motion for Reconsideration [Doc. # 43] is **DENIED**.

SIGNED at Houston, Texas, this **20th** day of **May, 2016**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE