IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAPSTONE ASSOCIATED SERVICES, LTD., *et al.*, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. H-15-3233 |
| ORGANIZATIONAL STRATEGIES, INC., *et al.*, Defendants. | § § § § | |

# MEMORANDUM AND ORDER

This case is before the Court on the Motion to Dismiss or in the Alternative for Summary Judgment ("Motion") [Doc. # 27] filed by Defendants Organizational Strategies, Inc. ("OSI"), Nicolette Hendricks, William Hendricks, Integration Casualty Corp., System Casualty Corp., and Optimal Casualty Corp., to which Plaintiffs Capstone Associated Services, Ltd. and Capstone Associated Services (Wyoming), Limited Partnership (collectively, "Capstone") filed a Response [Doc. # 35]. Defendants filed a Reply [Doc. # 37].

After a stay pending arbitration of other claims in the lawsuit, the case was reinstated on the Court's active docket and Defendants filed a Supplemental Brief [Doc. # 62] in support of their Motion. Plaintiffs filed a Supplemental Response [Doc. # 63], and Defendants filed a Supplemental Reply [Doc. # 64]. On August 6, 2019,

the parties presented oral argument to the Court in support of their respective positions.

The Court has carefully reviewed the full record and applicable legal authorities. Based on that review, the Court **grants** the Motion as to the common law trade secret misappropriation claim and the Texas Uniform Trade Secrets Act ("TUTSA") claim, and **denies** the Motion as to the breach of contract claim.

**I.     BACKGROUND**

A captive insurance company is a property and casualty insurance company specifically established to insure the risks of an associated business. Plaintiffs and their affiliates offer comprehensive captive management plans, including "Captive Planning" services.

Capstone entered into a Services Agreement [Doc. # 21-1] with Defendants to provide services in connection with the formation and administration of three captive insurance companies – Integration Casualty Corp., System Casualty Corp., and Optimal Casualty Corp. (collectively, the "Captives"). The Services Agreement included a limited license for Defendants to receive and use Capstone's "Documents," defined in the Services Agreement to mean "documents prepared by or at the direction

of Capstone for the Companies,[1] including but not limited to insurance policies, insurance contracts, insurance coverage agreements, reinsurance agreements and treaties, and loan agreements." *See* Services Agreement, Art. V. The Services Agreement provided that the license would expire upon the termination of the agreement.[2]

In 2012, Defendants expressed concern regarding the Captives' insurance polices and potential tax implications. In connection with those concerns, Mrs. Hendricks requested certain policy and pricing information from Capstone. Capstone alleges that it provided the documents and information to Defendants to address these concerns, having been assured by Mrs. Hendricks that the information would not be redistributed, copied, or provided to any party other than Defendants and their accounting firm. Capstone alleges that Defendants did not intend to keep the information confidential and, instead, intended to share the information "with an unauthorized third party that is one of Plaintiffs' competitors" – specifically Intuitive

---

[1] "Companies" is a defined term in the Services Agreement, referring to the three Captives. *See* Services Agreement, p. 1.

[2] The Services Agreement had an initial mandatory term of three years, ending December 31, 2013. *See* Services Agreement, Art. IV, ¶ 4.6. The term would automatically renew for an additional three-year term unless written notice of termination was given by July 1, 2012. *See id.* Every three years thereafter the Services Agreement would automatically renew unless terminated upon sixteen months prior written notice of termination. *See id.*

Captive Solutions, LLC ("Intuitive"). *See* Amended Complaint [Doc. # 21], ¶ 23. Capstone did not, in the Amended Complaint, in its briefing, or during oral argument, identify any documents it provided to Defendants in 2012 that Defendants were not entitled to receive under the terms of the Services Agreement.

Capstone alleges that the Services Agreement terminated effective December 31, 2012. Capstone further alleges that, at that point, Defendants were contractually obligated to return Plaintiffs' documents to Capstone. Capstone alleges that Defendants failed to return the documents and, instead, disseminated copies of the documents to a second competitor.

Capstone filed this lawsuit in Texas state court, asserting causes of action for trade secret misappropriation, violation of TUTSA, and breach of contract. Defendants removed the case to federal court, then filed their Motion to Dismiss. The Court granted the Motion to Dismiss the trade secret misappropriation and TUTSA claims, with leave to replead. *See* Memorandum and Order [Doc. # 18]. Plaintiffs then filed an Amended Complaint, again asserting each of the three claims. Defendants filed the pending Motion.

Meanwhile, Plaintiffs sought and obtained an order from this Court compelling arbitration pursuant to the arbitration provision in the parties' Engagement Letter. *See* Memorandum and Order [Doc. # 42]. The Engagement Letter required arbitration of

disputes relating to or arising out of services provided by the Feldman Law Firm LLP and its principal attorney Stewart Feldman (collectively, "Feldman"), who were the attorneys for Capstone in connection with its business of providing planning services for captive insurance companies. The Final Arbitration Award [Doc. # 49-1] was issued February 25, 2019, and resolved issues not asserted in this lawsuit.

Following entry of the Final Arbitration Award, this case was reinstated on the Court's active docket. The parties filed supplemental briefing on the pending Motion, and presented oral argument in support of their respective positions. The Motion is now ripe for decision.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d

614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.

      B.    <u>**Summary Judgment Standard**</u>

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions in the record, together with any affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 434 (5th Cir. 2016). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *See Guar. Bank & Trust Co. v. Agrex, Inc.*, 820 F.3d 790, 794 (5th Cir. 2016).

## III. TUTSA CLAIM

TUTSA applies "to the misappropriation of a trade secret made on or after [September 1, 2013]." *See In re Mandel*, 578 F. App'x 376, 384 n.8 (5th Cir. Aug. 15, 2014) (citing Uniform Trade Secrets Act, 83rd Leg. R.S., ch. 10 § 3, 2013 TEX. GEN. LAWS 12, 14); *Sisoian v. Int'l Bus. Machines Corp.*, 2014 WL 4161577, *2 n.4 (W.D. Tex. Aug. 18, 2014). In this case, Plaintiffs allege, and the record establishes, that by the end of June 2012, Defendants had obtained documents and information from Plaintiffs. It is these documents that Plaintiffs allege Defendants improperly used in violation of TUTSA. Capstone does not identify in the Amended Complaint or in their briefing, any alleged misappropriation after September 1, 2013. Indeed, during oral argument, Plaintiffs' counsel conceded that he was not aware of any post-September 1, 2013, misappropriations. Therefore, TUTSA does not apply to the alleged misappropriation and that claim is **dismissed**.

## IV. TRADE SECRET MISAPPROPRIATION CLAIM

Absent the applicability of TUTSA, common law trade secret misappropriation law applies. *See id.* To prevail on a trade secret misappropriation claim under Texas law, "a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the

plaintiff." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018). Defendants argue that Plaintiffs have failed to allege acquisition through improper means, and failed to allege use of the trade secrets.

    A.    <u>**Obtaining the Trade Secrets**</u>

        1.    **Texas Legal Requirements**

An essential element of a trade secret misappropriation claim is that "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means." *Id*. Stated differently, "trade secret law protects against . . . any taking that occurs ***through*** breach of a confidential relationship or other improper means." *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 486 (5th Cir. 2016) (emphasis added).

The Court in its Memorandum and Order entered December 23, 2015, stated that the Texas common law trade secret misappropriation claim requires a showing that "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means . . .." *See* Memorandum and Order [Doc. # 18], p. 4 (quoting *Spear Marketing, Inc. v. Bancorpsouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015)). During oral argument, Capstone's counsel stated – somewhat cryptically – that the Spear case is viewed with disfavor and is no longer considered a correct statement of the law. Capstone argues that the trade secret misappropriation claim

does not require that the information be acquired through breach of a confidential relationship. Capstone contends that the claim requires only that the disclosure of the information was a breach of the relationship. Capstone relies on a 1958 decision from the Texas Supreme Court quoting a portion of the Restatement of Torts: "One who discloses or uses another's trade secrets, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him." *Hyde Corp. v. Huffines*, 158 Tex. 566, 575 (Tex. 1958); *see also Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 583 (5th Cir. 2013). The Texas courts have consistently, and recently, stated that misappropriation of trade secrets under Texas law requires that the defendant have acquired the trade secret "through a breach of a confidential relationship or through other improper means." *See Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 360 (Tex. App. – Houston [1st Dist.] 2018, no pet.) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App. – Austin 2004, pet. denied)); *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 210 (Tex. App. – Dallas 2013, review denied) (citing *Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 437 (Tex. App. – Dallas 2012, no pet.); *Rusty's Weigh Scales & Serv., Inc. v. N. Tex. Scales, Inc.*, 314 S.W.3d 105, 109 (Tex. App. – El Paso 2010, no

pet.)). Likewise, the Fifth Circuit has repeatedly, both before and after *Daniels Health*, identified the second element as they did in *Spear*, requiring that "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means." *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (citing *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)); *accord, GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018); *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 486 (5th Cir. 2016). Based on this clear and recent legal authority, binding on this federal district court, the Court identifies the second element of the misappropriation of trade secret claim as "the trade secret was acquired through a breach of a confidential relationship or discovered by improper means."

### 2. Capstone's Allegations

Capstone's allegations indicate that Defendants acquired the trade secrets in connection with a valid license in the parties' Services Agreement. Capstone alleges that Defendants later breached the Services Agreement and the license contained in that Agreement by allegedly "using" the trade secrets by disclosing them to third parties. Capstone conflates the element of improper acquisition with element requiring "use" of the alleged trade secrets. During oral argument, however, Capstone's attorney conceded that, although Defendants did not possess the

documents in question until they were provided in response to Mrs. Hendricks's request, Defendants were entitled to request and obtain the documents under the Services Agreement. Acquisition of the alleged trade secrets pursuant to the Services Agreement, therefore, did not constitute acquisition or discovery "through improper means" and thus fails to satisfy this element of a claim for trade secret misappropriation.

### 3. Acquisition Through Breach of a Confidential Relationship

In the Amended Complaint, Plaintiffs allege also that Defendants obtained the documents and information relating to policy pricing, policy coverage and risk diversification "through a breach of a confidential relationship" because Defendants, through Mrs. Hendricks, promised that the information would not be redistributed, copied or delivered to any other party except Defendants' accounting firm and only for accounting and pricing analysis purposes while "knowing all along she would be sharing the trade secrets with an unauthorized third party that is one of Plaintiffs' competitors." *See* Amended Complaint, ¶ 23. As an initial matter, Capstone has failed to allege a factual basis for the existence of a confidential relationship. For purposes of a misappropriation of trade secret claim under Texas common law,"'confidential relationship' means a relationship in which the owner of a trade secret discloses it in confidence so as to place the other party under a duty to keep his

secret." *Kana Energy Servs., Inc. v. Jiangsu Jinshi Mach. Grp. Co.*, 565 S.W.3d 347, 352 (Tex. App. – Houston [14th Dist.] 2018, no pet.) (internal quotation and citation omitted). The Services Agreement specifically grants Defendants the right to "audit, examine, and make copies of its books and accounts maintained by Capstone pursuant to this Agreement." *See* Services Agreement, Art. IV, ¶ 4.1(k). The Services Agreement also grants Defendants a "limited, non-exclusive license to use certain Documents[3] delivered from time-to-time to [them] by Capstone." *See id.*, Art. V, ¶ 5.3. The License provision includes an acknowledgment by Defendants that "the use and possession of such Documents under this license shall at all times remain subject to the requirements of this Agreement." *Id.* Capstone, in drafting the Services Agreement, did not identify a confidential relationship between the parties or impose a duty of confidentiality on Defendants.

Capstone cites the provision in the Services Agreement that acknowledges that "all Documents shall remain the property of Capstone, and shall be returned to Capstone or destroyed upon the termination of this Agreement for whatever reason." *See id.*, Art. V, ¶ 5.2. This provision, entitled "Ownership Retained by Capstone,"

---

[3] As noted above, "Documents" is defined in the Services Agreement to mean "documents prepared by or at the direction of Capstone for the Companies, including but not limited to insurance policies, insurance contracts, insurance coverage agreements, reinsurance agreements and treaties, and loan agreements." *See* Services Agreement, Art. V.

does not address how Defendants are to use the Documents while properly in their possession. Instead, it addresses only Capstone's ownership and right to insist on return of the documents following termination of the Services Agreement.

Capstone cites also an email from Feldman to Mrs. Hendricks stating that the policy and pricing documents are Capstone's intellectual property, and thanking Hendricks "for following our agreement not to redistribute." *See* Email [Doc. # 63-4], p. 3. There is no response or other communication from Mrs. Hendricks confirming any agreement not to redistribute the documents.

In the Amended Complaint, Plaintiffs reference "various agreements" that they allege created a confidential relationship. *See* Amended Complaint, ¶ 21. The Services Agreement includes a provision that it "may be amended, modified, or supplemented only by written agreement executed by the parties hereto." *See* Services Agreement, Art. VI, ¶ 6.9. There is no allegation that there exists a written confidentiality agreement executed by all parties to the Services Agreement. Therefore, Feldman's unilateral email, to which there was no response, does not provide a factual basis for the existence of a confidential relationship between Capstone and Defendants. Additionally, the facts alleged in the Amended Complaint do not establish an agreement between Capstone and Defendants that would create a confidential relationship.

Additionally, as noted above, it is conceded that Defendants were entitled to receive the subject documents under the Services Agreement. As a result, they did not obtain the documents *through* the breach of any confidential relationship that may have existed.

### 4. Conclusion on Elements of Trade Secret Misappropriation

Capstone provided documents that Defendants were entitled to receive under the terms of the Services Agreement. Capstone fails to allege Defendants acquired or discovered the documents through improper menas.

Capstone also has failed to allege a factual basis for the existence of a confidential relationship, and has failed to allege factually that Defendants acquired the relevant documents *through* the breach of any confidential relationship that allegedly existed. Therefore, Capstone has not alleged that Defendants acquired its trade secrets through a breach of a confidential relationship. Absent factual allegations to support this element of the common law trade secret misappropriation claim, the claim must be dismissed.

### B. Statute of Limitations

Defendants also seek summary judgment on the trade secret misappropriation claim based on the applicable statute of limitations. A plaintiff must file a trade secret misappropriation claim "not later than three years after the misappropriation is

discovered or by the exercise of reasonable diligence should have been discovered." TEX. CIV. PRAC. & REM. CODE § 16.010(a). The discovery rule is expressly incorporated in the three-year statute of limitations, deferring accrual of a cause of action until the "plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 365 (5th Cir. 2000). A misappropriation of trade secrets that continues over time is a single cause of action and the limitations period begins to run without regard to whether the misappropriation is a single or continuing act. *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 16.010(b)).

Capstone filed this lawsuit on October 1, 2015. Plaintiffs allege that they did not learn that Defendants had allegedly misappropriated their trade secrets until 2014. *See* Amended Complaint, ¶ 23. Defendants have presented uncontroverted evidence that Plaintiffs knew by June 2012 that Defendants had disclosed Capstone's trade secret documents to Intuitive, an alleged competitor of Plaintiffs. *See* Motion, pp. 20-22 (citing June 18, 2012 email transmitting Intuitive report to Capstone, and June 19, 2012 email from Feldman following his review of the report). Capstone failed to file its common law trade secret misappropriation claim within three years thereafter. As a result, the claim is time-barred and summary judgment in favor of Defendants is granted.

## V. BREACH OF CONTRACT CLAIM

Defendants argue that they are entitled to summary judgment on Plaintiffs' breach of contract claim because Defendants were entitled to retain possession of the documents while the parties were in litigation. As argued by Plaintiffs, the breach of contract claim is much broader than simple retention of possession of Plaintiffs' documents. In the Amended Complaint, Plaintiffs allege that Defendants breached the Services Agreement "through their intentional use of the intellectual property after the termination" of the Services Agreement's licensing agreement. *See* Amended Complaint, ¶ 40. Therefore, the argument that Defendants were entitled to retain possession of the documents during litigation does not establish entitlement to summary judgment on the breach of contract claim as asserted in the Amended Complaint. Summary judgment on the contract claim is unwarranted.

## VI. CONCLUSION AND ORDER

Plaintiffs allege only misappropriation that occurred before September 1, 2013. As a result, the TUTSA claim is dismissed with prejudice as outside the Act's coverage.

Plaintiffs in the Amended Complaint have failed to allege facts establishing an essential element of their common law trade secret misappropriation claim – that the

trade secrets were acquired or discovered through improper means or through breach of a confidential relationship. Additionally, the claim is time-barred.

Plaintiffs allege a breach of contract claim that encompasses more than merely retaining documents after the Services Agreement terminated. As a result, Defendants are not entitled to summary judgment on the breach of contract claim based on their argument that they were entitled to retain the documents because there was ongoing litigation. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss or for Summary Judgment [Doc. # 4] is **GRANTED** as to the TUTSA claim and the common law trade secret misappropriation claim, which are **DISMISSED WITH PREJUDICE**, and is **DENIED** as to the breach of contract claim.

SIGNED at Houston, Texas, this **14th** day of **August, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE